# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 3, 2007

## STATE OF TENNESSEE v. WILLIAM EDWARD WRIGHT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-C-2045     Cheryl Blackburn, Judge**

_____

**No. M2006-01665-CCA-R3-CD - Filed January 22, 2008**

_____

The defendant, William Edward Wright, was convicted by a Davidson County jury of one count of conspiracy to sell over twenty-six grams of cocaine, a Class B felony; two counts of facilitation of the sale of over twenty-six grams of cocaine, a Class C felony; and one count of possession with intent to deliver over twenty-six grams of cocaine, a Class B felony.  He was sentenced by the trial court as a Range II offender to twenty years for the conspiracy conviction, ten years for each of the facilitation convictions, and twenty years for the possession with intent to deliver conviction. Finding the defendant to be a professional criminal, that he had an extensive history of criminal activity, and that the offenses were committed while he was on probation, the trial court ordered that the twenty-year sentences be served consecutively, for an effective sentence of forty years in the Department of Correction.  On appeal, the defendant argues that the evidence was insufficient to support his conspiracy and facilitation convictions, the trial court erred in denying his motions to suppress his statement and the evidence seized during the search of his residence, and his sentence was excessive.  Finding no error, we affirm the judgments of the trial court.  However, we remand for the entry of a corrected judgment in Count 3 to reflect the correct conviction offense of facilitation of the sale of over twenty-six grams of cocaine.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Paula Ogle Blair (on appeal) and Bill Lane (at trial), Nashville, Tennessee, for the appellant, William Edward Wright.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case arises out of undercover cocaine purchases involving the defendant and a confidential informant. According to the State's proof, on January 27 and January 31, 2003, a confidential informant working for the Twentieth Judicial District Drug Task Force made undercover cocaine purchases from the defendant. On February 5, 2003, the drug task force officers executed a search warrant on the defendant's residence where they uncovered, among other things, bags of cocaine, a bag of marijuana, three guns, plastic baggies for packaging drugs, and a set of digital scales. After being advised of his rights, the defendant informed the officers that the guns and drugs belonged to him. He was subsequently charged with several offenses, including conspiracy to sell over three hundred grams of cocaine, two counts of selling over twenty-six grams of cocaine, possession of over twenty-six grams of cocaine with the intent to deliver, and possession of a handgun by a convicted felon. At the conclusion of a jury trial, he was convicted of conspiracy to sell over twenty-six grams of cocaine, two counts of facilitation of the sale of over twenty-six grams of cocaine, possession with intent to deliver over twenty-six grams of cocaine, and possession of a handgun. However, following the jury's verdict, the State nolle prosequied the possession of a handgun by a convicted felon count of the indictment.[1]

## Suppression Hearing

In August 2004, the defendant filed motions to suppress any and all evidence seized as a result of the search of his home and all statements made after his arrest. The defendant alleged that the affidavit in support of the search warrant failed to establish probable cause for the search because it contained vague information and misrepresentations, failed to establish the basis of knowledge or veracity of the criminal informant, and did not show any connection between the alleged criminal activity and the place to be searched. He further alleged that he was not advised of his constitutional rights, did not waive his right to remain silent or to have an attorney present during questioning, and made his statement only after promises of leniency were given to him by the interviewing officers.

The State's first witness at the September 29, 2004, hearing on the motions to suppress was Metropolitan Police Sergeant James McWright, Director of the Twentieth Judicial District Drug Task Force. He testified that on February 5, 2003, he was head of the investigative division of the drug task force and participated in the execution of the search warrant at the defendant's residence, located at 2401½ Santi Avenue in Nashville. He also participated in Officer Aaron Thomas' interview of the defendant at the residence. According to Sergeant McWright, Officer Thomas advised the defendant of his rights and the defendant then made a statement in which he said that he had eight months left on his parole and would do whatever it took to help his family. The defendant

---

[1] The defendant was also indicted for possession of over twenty-six grams of cocaine in a school zone with the intent to deliver but was found not guilty by the jury. Since the portion of the trial testimony relating to that offense is not relevant to the issues on appeal, we have not included it in our summary of the facts.

admitted he was a convicted felon, said that the cocaine and guns found in the residence belonged to him, and provided the investigators with the names of two of his drug suppliers. The defendant additionally informed the officers that his drug suppliers would probably be returning to town in three to five days.

Sergeant McWright testified that drug task force officers, who had seen the defendant leave the house with his codefendant, Laquiesha Massey, stopped him at the intersection of Twenty-third and Clarksville Highway and brought him back to the residence for the execution of the search warrant. The defendant was detained during the search but was then released. The defendant never asked for an attorney and made no indication that he did not wish to answer the investigators' questions. On cross-examination, Sergeant McWright testified that, to his knowledge, the defendant did not sign a written waiver of his <u>Miranda</u> rights. He stated that he told the defendant that he had no authority to promise him anything other than he would inform the district attorney and the judge about the defendant's cooperation with the drug investigation. However, the extent of the defendant's cooperation was his revelation of the names of his drug suppliers. The defendant was supposed to call the investigators within two or three days of the search to let them know when and where the drug suppliers were returning, but he never followed through with that information.

Metropolitan Police Officer Aaron Thomas testified that he was assigned to the Twentieth Judicial Drug Task Force and questioned the defendant during the February 5, 2003, search of his residence. He said he told the defendant that he would make the district attorney aware of any information the defendant provided to further the investigation. However, other than providing the names of the two drug suppliers, the defendant did nothing to help their drug investigation. Officer Thomas said that his next contact with the defendant did not occur until March 21, 2003, when he served a probation violation warrant on him. The defendant had over $2300 on his person at that time and informed Officer Thomas that he was waiting for "his boys to come back from Detroit." When he asked what the defendant meant, the defendant replied that they were "going to pick up two," which Officer Thomas interpreted to mean two kilos of cocaine.

On November 16, 2004, the trial court entered an order overruling both motions to suppress, finding, among other things, that the affidavit provided lengthy and detailed information about the defendant's drug activity and that the information provided by the confidential informant had been corroborated by independent police investigation. The court further found that the defendant was advised of his rights and voluntarily waived those rights before making his statement to the investigating officers.

**Trial**

Officer Thomas testified at trial that he had been assigned to the drug task force for approximately six and one-half years and that his duties were to investigate major and mid-level drug dealers. He said he began investigating the defendant in early 2003 based on information he had received from a confidential informant that the defendant was supplying drugs in the north Nashville area. On January 27, 2003, he arranged for the confidential informant to make an undercover drug

purchase from the defendant. After searching the confidential informant and his vehicle, Officer Thomas provided him with a transmitting device and $800 in U.S. currency. The confidential informant telephoned the defendant to arrange the drug buy and then drove to 1823 Fifth Avenue North in Davidson County, where the drug transaction was completed. Officer Thomas identified the tape recordings of the telephone conversation and of the drug transaction itself, both of which were admitted as exhibits, along with the transcripts that had been prepared from the recordings. He also identified the defendant's voice on the recordings, which were played for the jury. He said he observed the confidential informant approach the door of the Fifth Avenue North residence prior to making the drug buy. After the transaction was completed, he met with the confidential informant and took possession of the baggie of rocky white substance that the informant had purchased from the defendant. Officer Thomas later sent the substance, which field-tested positive for cocaine, to the Tennessee Bureau of Investigation ("TBI") laboratory for analysis.

After collecting the cocaine from the informant, Officer Thomas joined his fellow drug task force officers, who were conducting surveillance on the defendant. He said that he and his fellow officers followed the defendant to several different locations and observed a number of different vehicles coming and going from the Fifth Avenue North address. During their continued surveillance on January 28 and January 29, they again followed the defendant to several locations, including the Fifth Avenue North address and 2401½ Santi Avenue. Officer Thomas stated that he observed several vehicles coming and going from both addresses, with each vehicle remaining, on average, only five to ten minutes. Based on his training and experience, he believed that the vehicles' occupants were visiting the residences in order to purchase drugs.

Officer Thomas testified that he arranged for the confidential informant to make another drug purchase from the defendant on January 31, 2003. He, essentially, repeated the same procedure he used with the previous drug transaction, meeting with the confidential informant, recording two telephone calls the informant made to arrange the drug purchase, searching the informant and his vehicle, providing the informant with $800 in U.S. currency and a transmitting device, and following him to the 1823 Fifth Avenue North location and watching him enter the residence. The defendant, who was under surveillance, was at 1613-A Seventeenth Avenue North when the informant entered the Fifth Avenue North address but soon thereafter left and went to the Fifth Avenue location to complete the drug transaction. Tape recordings and transcripts of the drug transaction and the telephone calls the informant had made to set up the drug purchase were identified by Officer Thomas and admitted as exhibits. As with the previous transaction, Officer Thomas again identified the defendant's voice on the recording of the drug transaction.

Officer Thomas testified he met with the informant after the completed drug transaction to take possession of the "white rocky substance" that the informant had purchased. At that time, he again searched the informant and his vehicle to ensure that he had no other drugs or evidence in his possession. He later sent the substance, which field-tested positive for cocaine, to the TBI laboratory for detailed analysis. On February 5, 2003, he executed three search warrants: one at 1823 Fifth Avenue North; one at 1613-A Seventeenth Avenue North; and one at 2401½ Santi Avenue, where the defendant resided with his wife, Laquiesha Massey. At the defendant's residence, he uncovered

several bags of cocaine and crack cocaine; a bag of marijuana; a set of digital scales; baggies used for packaging drugs; a .380 semi-automatic weapon, which was listed as stolen; a .25 semi-automatic; and a revolver. Officer Thomas identified the various items uncovered in the search and said that the defendant had over $2300 on his person at the time the search was executed.

Officer Thomas testified that he read the Miranda warning to the defendant at the scene. After indicating that he understood his rights and wished to make a statement, the defendant informed him that the guns and drugs were his. On cross-examination, Officer Thomas acknowledged that there were several unidentified persons present at the Fifth Avenue North address during both the January 27 and January 31 drug transactions. He further acknowledged that none of the marked money was found on the defendant and that the defendant shared the Santi Avenue home with Ms. Massey.

Metropolitan Police Officer Herbert Kajihara testified that he was assigned to the Twentieth Judicial District Drug Task Force and participated in the search of the defendant's residence. He identified photographs of the various items he found in the master bedroom of the residence, including a set of digital scales with white residue, a bag of crack cocaine, a bag of powder cocaine, a bag of marijuana, a large bag of plastic baggies, the three weapons, and various documents addressed to the defendant at the Santi Avenue address.

Luther Moore testified that he was one of the codefendants and had pled guilty in connection with the case. He said that during 2002 and early 2003 the defendant, whom he had known for almost twenty years, was an almost daily visitor to his home, located at 1823 Fifth Avenue North. During that time, the defendant sold cocaine from Moore's home. Moore said that the defendant did not store the cocaine in his home but instead brought it with him. He stated that he had purchased some cocaine from the defendant. He did not know how much cocaine the defendant sold from his home during that time and was not present on January 27 and January 31, 2003, when the undercover drug purchases were made. On cross-examination, Moore acknowledged that he had received probation in connection with the case but denied that it had been promised to him in exchange for his giving a statement implicating himself and the defendant in the crimes.

Metropolitan Police Officer Ed Rigsby, a drug task force member who participated in the investigation of the defendant, testified that he was assigned to the surveillance team on January 27, 2003. At approximately 7:00 p.m. that night, Officer Thomas radioed that the informant was en route to the Fifth Avenue North location to make a drug purchase. A short time later, the defendant arrived in a red Honda Civic, accompanied by two other men, including one of the codefendants, Edward Spencer. The informant followed soon thereafter, stayed a short while at the residence, and then left. Afterwards, the defendant and another man returned to the Santi Avenue residence. According to Officer Rigsby, the rest of that night, there were "numerous trips back and forth to other locations in numerous vehicles." Officer Rigsby testified that he again conducted surveillance on the defendant at the Fifth Avenue North residence the following night. From the time he began his surveillance, at approximately 9:00 p.m., until shortly after 12:00 a.m., when the defendant returned to the Santi Avenue residence, Officer Rigsby observed ten to fifteen cars coming and going

from the Fifth Avenue North location. He said that the volume and pattern of traffic coming and going from the residence were indicative of drug trafficking.

Twentieth Judicial District Drug Task Force Director James McWright testified that on January 27, 2003, he was conducting surveillance of the Fifth Avenue North address, the location where the informant had arranged to purchase the drugs. He said he observed a red Honda Accord arrive at the house at 7:48 p.m., and three men, one of whom was identified as the defendant, get out and go inside. He stated that the confidential informant arrived at 7:55 p.m., went inside, made the drug buy, which Director McWright was monitoring on the informant's wireless transmitter, and left at 7:59 p.m. Approximately twenty minutes later, at 8:20 p.m., the defendant left in the Honda with a second man and returned to his home on Santi Avenue. Several vehicles came and went from the Santi Avenue address, and the defendant came outside and met with one or two of them. According to Director McWright, such activity was indicative of drug trafficking.

Director McWright testified that he also conducted surveillance of the defendant at the Fifth Avenue North address on January 28 and January 29, 2003. He said that from 9:00 p.m. until the defendant left at approximately 12:30 a.m., he observed approximately fifteen vehicles coming and going to the house, with each vehicle staying only five to ten minutes. Based on his training and experience, he believed that the Fifth Avenue residence was "being used as a drug house," from which smaller amounts of drugs were sold.

Director McWright testified that he again conducted surveillance of the defendant on January 31, 2003, when the second drug buy was arranged. He said he located the defendant at 1613-A Seventeenth Avenue North and followed him to the Fifth Avenue North address, where the drug transaction was completed. On February 5, 2003, he participated in the search of the defendant's Santi Avenue residence. He stated that Officer Thomas read the defendant his rights and the defendant then made a statement in which he admitted ownership of the three guns and the drugs found in the bedroom of his residence.

The State's final three witnesses, TBI forensic chemists Patti Choatie, William Stanton, and Cassandra Ann Franklin, testified about their respective analyses of the substances purchased by the confidential informant on January 27 and January 31, 2003, and uncovered during the February 5, 2003, search of the defendant's home. Choatie determined that the substance involved in the first drug buy consisted of 26.6 grams of cocaine; Stanton determined that the substance involved in the second drug buy consisted of 27.8 grams of cocaine; and Franklin determined that the substances in the baggies uncovered during the search of the defendant's home consisted of one-tenth of a gram of cocaine, six-tenths of a gram of cocaine, 18.8 grams of cocaine, 26.8 grams of cocaine, and 2.5 grams of marijuana. Franklin testified that the substance in one of the bags she analyzed, marked as Exhibit 5 on her laboratory report, was negative for controlled substances.

The defendant elected not to testify and rested his case without presenting any proof.

**Sentencing Hearing**

At the June 2, 2005, sentencing hearing, the defendant testified that he was married to his codefendant, Laquiesha Massey, and had two children with her. He said that when he was out of jail he had been helping to support those two children, as well as his other five children, by working part-time jobs through temporary services. He confirmed that he had obtained his GED and said that, if released on probation, he intended to live with his aunt, Mary Wright. He testified that he had a drug problem and, as part of his request for release into the community, was asking the court to place him in a drug treatment program. He stated that he would abide by the rules of probation if granted release into the community. Finally, he expressed his frustration at having received what he believed was an unfair trial, testifying that he was not guilty of the offenses and that the State's witnesses had lied at trial.

On cross-examination, the defendant acknowledged that he had been convicted of felony simple possession in Davidson County, for which he had received a two-year sentence. He said, however, that he had been "forced to cop out to" that offense. He acknowledged that he had both pled guilty and been guilty of two additional drug offenses in Davidson County: a felony simple possession offense for which he had received a one-year sentence and a cocaine offense for which he had been sentenced to eight years. He further acknowledged that he had been found guilty of another cocaine charge in Sumner County and had been on probation for that offense at the time the instant offenses occurred. He denied that cocaine was found in his house, testifying that he was living at 1118A Lischey Avenue at the time of the instant offenses and that the drug task force officers had "lied about a whole lot of different stuff." He admitted that he had passed a note to one of the witnesses on the second day of trial, but denied that he had been attempting to tell the witness how to testify. He said that his note, which instructed the witness to say that he had gone with the defendant to "Moe's house, " where the defendant had retrieved a play station and then left, was simply the truth about what had happened.

The defendant's aunt, Mary Wright, confirmed that the defendant would live with her if released into the community. She complained that the defendant had not been appointed a different lawyer at trial, despite his repeated requests, and asserted that the defendant was innocent of the instant offenses.

The trial court found three enhancement factors applicable to all the offenses: the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range; the defendant had a history of unwillingness to comply with the conditions of a sentence involving release into the community; and the defendant committed the offenses while on probation from a previous conviction. See Tenn. Code Ann. § 40-35-114(2), (9), (14)(C) (2003). In addition, the trial court found the enhancement factor that the defendant possessed a firearm during the commission of the offense applicable to his conviction for possession of more than twenty-six grams of cocaine with the intent to sell. See Tenn. Code Ann. § 40-35-114(10) (2003). The court found one mitigating factor applicable: the defendant's criminal conduct neither caused nor threatened serious bodily injury, see Tenn. Code Ann. § 40-35-113(1) (2003), but found that it

-7-

was entitled to little weight.  Based on the defendant's extensive criminal record, which consisted of four prior felony and fourteen misdemeanor convictions, the trial court applied great weight to the enhancement factor that the defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range.  Accordingly, the trial court sentenced the defendant as a Range II offender to twenty years for the conspiracy conviction, ten years for each of the facilitation convictions, and twenty years for the possession with intent to deliver conviction. The trial court ordered the defendant to serve his twenty-year sentences consecutively, for an effective sentence of forty years, based on its findings that the defendant was a professional criminal, an offender whose record of criminal activity was extensive, and that he had committed the offenses while on probation.  See Tenn. Code Ann. § 40-35-115(b)(1), (2), (6) (2003).

## ANALYSIS

### I. Sufficiency of the Evidence

As his first two issues, the defendant challenges the sufficiency of the evidence in support of his conspiracy and facilitation convictions.  In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Conspiracy to Sell Over Twenty-Six Grams of Cocaine

The defendant argues that the evidence was insufficient to support his conviction for conspiracy to sell over twenty-six grams of cocaine because there was no proof that he was part of any conspiracy. He asserts that the State failed to show, either by direct or circumstantial evidence, that he formed an agreement with any codefendant to manufacture, deliver, or sell drugs. The State acknowledges that the evidence of a conspiracy was circumstantial, but argues that it was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant and Luther Moore entered into an agreement to sell drugs from Moore's house. We agree with the State.

To sustain the conviction, the State had to prove beyond a reasonable doubt that the defendant entered into a conspiracy to sell more than twenty-six grams of cocaine. Tennessee Code Annotated section 39-12-103(a) provides:

> The offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

Tenn. Code Ann. § 39-12-103(a) (2003). "No person may be convicted of conspiracy to commit an offense, unless an overt act in pursuance of the conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." Tenn. Code Ann. § 39-12-103(d) (2003). "'To prove a conspiracy, it is not necessary that the State show a formal agreement between the parties to do the unlawful act, but a mutual implied understanding is sufficient, although not manifested by any formal words, or by a written agreement.'" State v. Carter, 121 S.W.3d 579, 589-90 (Tenn. 2003) (quoting Randolph v. State, 570 S.W.2d 869, 871 (Tenn. Crim. App. 1978)). The State may rely upon circumstantial evidence and the conduct of the parties in their pursuit of the criminal enterprise to prove the existence of a conspiracy. Id. at 590.

Viewed in the light most favorable to the State, the evidence was sufficient to sustain the defendant's conviction for conspiracy to sell over twenty-six grams of cocaine. The drug transactions arranged by the confidential informant occurred at Moore's home, a location from which drug task force officers observed vehicle traffic patterns that were indicative of drug trafficking. In addition, Moore, who pled guilty in connection with the case, testified that the defendant regularly sold cocaine from his home during 2002 and 2003 and sold cocaine to him during that time. From this evidence, the jury could have reasonably concluded that the defendant conspired with Moore to use his home as a base from which to sell cocaine.

## B. Facilitation of the Sale of over Twenty-Six Grams of Cocaine

The defendant also contends that the evidence was insufficient to sustain his two convictions for facilitation of the sale of over twenty-six grams of cocaine. He concedes that the State presented

evidence to show that the drug transactions took place on January 27 and January 31, 2003, and that he was present in the home on both occasions, but argues that the State failed to prove beyond a reasonable doubt that he took part in either transaction. In support, he principally relies on the poor quality of the tape recordings and the fact that other voices, besides his own, can be heard on the recordings. He asserts that, although he was present, he "made no specific admissions [on the tapes] about his involvement." The State responds by arguing that the evidence was sufficient to establish the defendant's identity as the man who sold cocaine to the confidential informant. We agree that the State presented sufficient proof to show that the defendant, at the very least, furnished substantial assistance in the commission of the drug sales to the informant. Thus, we conclude that the evidence was sufficient to sustain the defendant's convictions for facilitation of the sale of over twenty-six grams of cocaine.

"A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2003). Under this statute, a defendant who has been "charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party." Tenn. Code Ann. § 39-11-403, Sentencing Comm'n Comments.

Although the tape recordings of the drug transactions include inaudible portions and the voices of other, unidentified persons who were present in the home with the confidential informant and the defendant at the time of the drug transactions, the defendant's audible voice can also be heard on both recordings. Moreover, despite the defendant's assertion that he made no specific admissions as to his involvement, he can be heard negotiating the price of cocaine with the informant. The transcript prepared based on the recording of the January 27, 2003, transaction includes the following portion:

> [CONFIDENTIAL INFORMANT]: What about um, dude done owe me about seven more man. How much you charging me for about like a eighth or something man. It's been one of them days man, this nigga talking about can't give me the rest of my money that these dudes rocks and shit man.
>
> [THE DEFENDANT]: (Inaudible) quarter?
>
> [CONFIDENTIAL INFORMANT]: (Inaudible). Give me the whole quarter for 65?
>
> [THE DEFENDANT]: Yeah.
>
> [CONFIDENTIAL INFORMANT]: Yeah, yeah, yeah.

At trial, Officer Thomas testified that, based on his training and experience, the phrase "whole quarter for 65" was a reference to the defendant's selling the informant a quarter kilo of cocaine for $6500.

The defendant's voice can also be heard on the tape recording of the telephone conversation in which the informant set up the January 27 drug deal. In that recording, the informant can be heard asking the defendant where they are to meet. The defendant directs him to go to the same place that the informant's cousin "always come to." The defendant arrived at the Fifth Avenue North location a short time after this conversation occurred, followed by the informant, who went inside, stayed a few minutes, and returned with cocaine he had purchased. In the telephone calls that the informant made to arrange the January 31 drug buy, he can be heard asking for "Big Will" and "Will" and stating that Will had said for him to come get an "onion," which, as Officer Thomas explained at trial, is a word commonly used by drug dealers to refer to an ounce of whatever drug is being sold. A woman identified as "Benita" can be heard telling the informant that Will is scheduled to meet him in "15 to 20" and confirming that the meeting place is "over there." After that telephone conversation, the informant went to the Fifth Avenue location, where he was joined a short time later by the defendant. The informant stayed a few minutes and then left with the cocaine he had purchased.

In addition to this evidence, the jury also heard testimony from the various drug task force officers that the defendant's behavior was consistent with a person involved in drug dealing. The jury heard, for example, that multiple vehicles came and went in a very short amount of time from both the Fifth Avenue North location and the defendant's residence on Santi Avenue, with the defendant coming outside to meet one or two of the vehicles that came to his home address. The jury also heard testimony from Luther Moore that the defendant regularly sold cocaine from the Fifth Avenue North residence in 2002 and 2003. From all this evidence, the jury could have reasonably concluded that the defendant was involved, at least to some degree, in the drug sales to the confidential informant that took place on January 27 and January 31, 2003. By convicting the defendant of the lesser-included offenses of facilitation in both counts, the jury obviously found that the State had failed to prove beyond a reasonable doubt that the defendant was the individual who actually sold the drugs to the informant but had proved that the defendant, knowing that someone else intended to make the sales, knowingly furnished substantial assistance in furtherance of those drug sales. The evidence, therefore, was sufficient to sustain the defendant's two convictions for facilitation of the sale of over twenty-six grams of cocaine.

## II. Denial of Motions to Suppress

As his next two issues, the defendant contends that the trial court erred in denying his motions to suppress the results of the search of his home and the statement he made during the search. When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest

legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

## A. Motion to Suppress Statement

The defendant first contends that his statement should have been suppressed because he was not given Miranda warnings, as evidenced by the fact that no written waiver was executed. In the alternative, he argues that he was coerced into making the statement by the interviewing officers, who overcame his free will by "dangl[ing] a promise to assist him." The State argues that the evidence supports the trial court's finding that the defendant's statement was voluntarily given after he was properly advised of his rights. We agree with the State.

Both the United States and Tennessee Constitutions protect a defendant from being compelled to give evidence against himself. See U.S. Const. amend. V; Tenn. Const. art. I, § 9. In Miranda v. Arizona, 384 U.S. 436, 471-75, 86 S. Ct. 1602, 1626-28 (1966), the United States Supreme Court held that a defendant's statements made during a custodial interrogation are inadmissible at trial unless the State establishes that the defendant was informed of his right to remain silent and his right to counsel and that he knowingly and voluntarily waived those rights. Whether the defendant made a voluntary, knowing, and intelligent waiver of those rights depends "'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482, 101 S. Ct. 1880, 1884 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938)). The waiver must be "'made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" State v. Blackstock, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting State v. Stephenson, 878 S.W.2d 530, 544-45 (Tenn. 1994)). The State has the burden of proving the waiver by a preponderance of the evidence. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997).

The defendant first asserts that "it is suspect that such a carefully orchestrated operation failed to use waiver forms and obtain his written waiver of his Miranda rights, if the warnings were actually communicated to [him]." However, as he acknowledges, a written waiver is not required when waiver can be found from the facts and surrounding circumstances. State v. Robinson, 622 S.W.2d 62, 67 (Tenn. Crim. App. 1980); see also State v. Steven James McCain, No. M2000-02989-CCA-R3-CD, 2002 WL 1033249, at *6 (Tenn. Crim. App. May 22, 2002) (noting that an express written waiver is not necessary to establish a valid waiver of a defendant's Miranda rights). In this case, Sergeant McWright testified that Officer Thomas informed the defendant of his Miranda rights prior to questioning and that the defendant indicated he understood his rights and wished to make a statement. After expressing his desire to talk to the officers, the defendant neither asked for an attorney nor indicated that he no longer wished to answer the officers' questions. We note that at the time he made the statement, the defendant had extensive experience with the criminal court

system. We conclude, therefore, that the evidence supports the trial court's findings that the defendant was properly advised of his rights and made a valid waiver of his right to remain silent or to have an attorney present during questioning.

In the alternative, the defendant asserts that he was coerced into making the statement by the interviewing officers' promises of leniency. When determining whether a statement is voluntary, a court must consider whether, under the totality of the circumstances, the statement resulted from coercion and overreaching by the law enforcement officers sufficient to overcome the defendant's free will. State v. Smith, 933 S.W.2d 450, 455-56 (Tenn. 1996); State v. Kelly, 603 S.W.2d 726, 728 (Tenn. 1980). "With regard to the claim that a confession is involuntary, findings of fact made by the trial court after an evidentiary hearing on a motion to suppress are afforded the weight of a jury verdict, and an appellate court will not set aside the trial court's judgment unless the evidence contained in the record preponderates against the findings of the trial court." State v. Berry, 141 S.W.3d 549, 578 (Tenn. 2004) (citing Odom, 928 S.W.2d at 22).

Both Sergeant McWright and Officer Thomas testified at the suppression hearing that no promises of leniency were made to the defendant. Sergeant McWright said he specifically told the defendant that he had no authority to promise him anything other than he would inform the district attorney and the judge about any cooperation the defendant provided to further the investigation, and Officer Thomas said that he told the defendant only that he would inform the district attorney about his cooperation. However, the defendant never followed through on his promises to let the officers know when and where his drug suppliers were returning. In overruling the motion to suppress, the trial court obviously accredited the testimony of these officers, as was within its province as the trier of fact. We conclude that the evidence supports the trial court's findings that no promises of leniency were made and, thus, that the defendant's statement was voluntary. Accordingly, we affirm the trial court's denial of the defendant's motion to suppress his statement.

### B. Motion to Suppress Results of the Search of Defendant's Home

On appeal, the defendant argues that the affidavit in support of the search warrant failed to establish probable cause for the search because it failed to meet the basis of knowledge or veracity prong of the test for hearsay information supplied by a criminal informant. Under both the Tennessee and United States Constitutions, no search warrant may be issued except upon probable cause, which "requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006). Tennessee requires a written and sworn affidavit, "containing allegations from which the magistrate can determine whether probable cause exists," as "an indispensable prerequisite to the issuance of a search warrant." State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). The affidavit must contain more than mere conclusory allegations on the part of the affiant. Id. The standard to be employed in reviewing the issuance of a search warrant is "whether the issuing magistrate had 'a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" Smotherman, 201 S.W.3d at 662 (quoting State v. Ballard, 836 S.W.2d 560, 562 (Tenn. 1992)).

In State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), our supreme court adopted the two-pronged Aguilar-Spinelli test for determining whether an affidavit that relies upon allegations supplied by a criminal informant is sufficient to establish probable cause. Under the first, "basis of knowledge" prong of the test, "facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place." State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Under the second, or "veracity" prong of the test, "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." Id. (citation omitted). Although independent police corroboration may compensate for deficiencies in either prong, each prong of the test must be satisfied to establish probable cause. Smotherman, 201 S.W.3d at 662 (citing State v. Williams, 193 S.W.3d 502, 507 (Tenn. 2006); Jacumin, 778 S.W.2d at 436).

In denying the motion to suppress the results of the search, the trial court found that the affidavit in support of the search warrant contained detailed information about the defendant's drug activity and that the information provided by the confidential informant had been corroborated by independent police investigation. The record fully supports these findings. Officer Thomas' affidavit, which covers four full pages of small, single-spaced type, provides exhaustive detail about the substantial information provided by the confidential informant, which included his familiarity with the defendant and his appearance, the houses he frequented, and the three vehicles he regularly drove. The confidential informant told the officers that the defendant, whom he knew as "William L.N.U." or "Big Will" was a major cocaine distributor in the North Nashville area and was willing to sell him an ounce of cocaine for $800. He also said that the defendant received several kilograms of cocaine at a time from his supplier in California and that he stashed the money and cocaine at 2401½ Santi Avenue but sold the cocaine from the 1823 Fifth Avenue North location. This information as to the informant's familiarity with the defendant was sufficient to establish the basis of knowledge prong of the test.

The affidavit also contains detailed information about the results of the drug task force officers' surveillance and investigation, including details of the January 27 and January 31 drug purchases that were monitored by the drug task force officers. It, additionally, includes a lengthy account of Officer Thomas' extensive training and experience as a drug task force officer and the knowledge he had gained about the typical habits and patterns exhibited by drug dealers. All of this information corroborated the information that the informant provided as to the defendant's criminal activity. We conclude, therefore, that the affidavit contained sufficient information to satisfy the veracity prong of the test and, thus, that probable cause for the search was established. Accordingly, we affirm the trial court's denial of the motion to suppress the results of the search of the defendant's home.

## III. Sentencing

As his last issue, the defendant contends that the trial court imposed an excessive sentence by failing to apply a proper mitigating factor and by ordering consecutive sentencing. Specifically, he argues that the trial court should have given more weight to the fact that his actions neither caused nor threatened bodily injury and that the trial court erred by finding that he was a professional criminal.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

The defendant first argues that the trial court erred by failing to give weight to the fact that no person suffered bodily harm in the commission of the offenses. The record reveals that the trial court applied this mitigating factor but determined that it was entitled to very little weight. The weight to be afforded to an applicable mitigating factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169. Since the trial court complied with the Sentencing Act and its findings are supported by the record, we can find no error in the fact that it assigned this mitigating factor very little weight.

The defendant also argues that the trial court erred in imposing consecutive sentencing based on its finding that he was a professional criminal. The defendant asserts that his presentence report "clearly shows that [he] has a history of work for temporary agencies." Tennessee Code Annotated section 40-35-115(b) provides that it is within the trial court's discretion to impose consecutive sentencing if it finds by a preponderance of the evidence that any one of the following criteria applies:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

These criteria are stated in the alternative; therefore, only one need exist to support the imposition of consecutive sentencing.

The presentence report reveals that the thirty-five-year-old defendant reported having worked "off and on" for a janitorial company from June 1997 until 2003, and for Shoney's Restaurant in 1995 and 1996. However, the probation and parole officer who prepared the report was unable to confirm either job due to her inability to obtain a listing for the janitorial company and the fact that Shoney's employment records dated back only to 2001. As such, we conclude that the evidence supports the trial court's finding that the defendant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of his livelihood. Furthermore, the evidence fully supports the trial court's additional findings that the defendant was an offender with an extensive record of criminal activity and that he committed the instant offenses while on probation from a previous offense. We conclude, therefore, that the trial court did not err by ordering consecutive sentencing.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court. However, we remand for entry of a corrected judgment Count 3 to reflect the conviction offense as facilitation of the sale of over twenty-six grams of cocaine.

_____
ALAN E. GLENN, JUDGE